Sylvie Bourassa (SBN# 283210)
Christian Levis (*pro hac vice* forthcoming)
Amanda G. Fiorilla (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
Email: clevis@lowey.com
Email: afiorilla@lowey.com
Email: sbourassa@lowey.com

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOSHUA LOCKWOOD and JERMAYNE BUCHANON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CRUNCHBASE INC., <br><br> Defendant. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Joshua Lockwood and Jermayne Buchanon ("Plaintiffs"), individually and on behalf of all others similarly situated, asserts the following against Defendant Crunchbase Inc. ("Crunchbase" or "Defendant"), based on personal knowledge, where applicable, information and belief, and the investigation of counsel.

## I.     INTRODUCTION

1.      Crunchbase is a market intelligence company that provides intelligence on private companies.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

2.      As a company that routinely works in the financial services sector and handles consumers' financial data, Crunchbase was well aware of the need to adopt robust data security measures to ensure the sensitive data in its custody was adequately protected from unauthorized use and disclosure.

3.      It did not. In late January 2026, Crunchbase suffered a data breach affecting approximately 2 million records containing personally identifiable information ("PII") (the "Data Breach").

4.      The Data Breach is attributable to the *ShinyHunters* cybercrime group who claims responsibility for the attack. The hackers have made available more than 400 MB of compressed files for download on their website after Crunchbase refused to pay a ransom.

5.      Crunchbase had a duty to safeguard and protect consumers' PII that was entrusted to it and could have prevented the Data Breach had it implemented and maintained reasonable data security measures and protocols.

6.      Crunchbase was fully aware that it was a prime target for cyber threats. The prevalence of these types of financial services breaches put it on notice of this fact.

7.      The Data Breach was a direct and proximate result of Crunchbase's failure to implement and follow basic security procedures.

8.      Because of Crunchbase's failures, unauthorized individuals were able to access and pilfer Plaintiffs' and Class Members' PII.

9.      As a result, Plaintiffs and Class Members are at substantially increased risk of future identity theft, both currently and for the indefinite future. Plaintiffs' and Class Members' PII that was compromised by cybercriminals in the Data Breach, is highly valuable because it is readily useable to commit fraud and identity theft.

10.     Plaintiffs on behalf of themselves and all others similarly situated, brings claims for negligence, breach of implied contract, unjust enrichment, and declaratory and injunctive relief.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

11.     Plaintiffs seek damages and injunctive relief requiring Crunchbase to adopt reasonably sufficient practices to safeguard the PII in Crunchbase's custody and control to prevent incidents like the Data Breach from recurring in the future.

12.     Given that information relating to the Data Breach, including the systems that were impacted and the configuration and design of Crunchbase's systems, remain exclusively in Crunchbase's control, Plaintiffs anticipate additional support for their claims will be uncovered following a reasonable opportunity for discovery.

## II.    JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Members of the Class defined below, and a significant portion of putative Class Members are citizens of a different state than Crunchbase.

14.     This Court has personal jurisdiction over Crunchbase because Crunchbase maintains its principal place of business in Michigan, conducts substantial business in this state and Crunchbase's acts and omissions giving rise to Plaintiffs' and the Class's claims occurred in this forum.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Crunchbase's principal place of business is in San Francisco County and a substantial part of the events or omissions giving rise to Plaintiffs' and the Class's claims occurred in this District.

16.     **Divisional Assignment**: This action arises in San Francisco County, in that a substantial part of the events which give rise to the claims asserted herein occurred in San Francisco County. Pursuant to L.R. 3-2(d), all civil actions that arise in San Francisco County shall be assigned to the San Francisco or Oakland Division.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## III.    PARTIES

### A.    Plaintiffs

17.    Plaintiff Joshua Lockwood is a citizen and resident of the State of Colorado. Plaintiff Lockwood provided his PII to Crunchbase for an account prior to the Data Breach as a condition of and in exchange for paying for and receiving services with Crunchbase.

18.    Plaintiff Jermayne Buchanon is a citizen and resident of the State of New York. Plaintiff Buchanon provided his PII to Crunchbase for an account prior to the Data Breach as a condition of and in exchange for paying for and receiving services with Crunchbase.

### B.    Defendant

19.    Defendant Crunchbase Inc. is incorporated in Delaware with its headquarters and principal place of business located at 564 Market Street, Ste. 500, San Francisco, CA 94104.

## IV.    BACKGROUND

### A.    Crunchbase Obtains, Collects, and Stores PII

20.    Crunchbase is a predictive private intelligence solution company, powered by live company data, AI, and market activity from approximately 80M+ users.

21.    Crunchbase is in complete operation, control, and supervision of its systems, and configured and designed its systems without adequate data security protections.

22.    Crunchbase was entrusted with Plaintiffs' and the Class's PII and was expected to secure and safeguard that information.

23.    Crunchbase did not properly verify, oversee, and supervise its entrustment of Plaintiffs' and Class Members' PII.

24.    By obtaining, using, disclosing, and deriving a benefit from Plaintiffs' and Class Members' PII, Crunchbase assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII from disclosure.

25.    Plaintiffs and Class Members reasonably expect that a company such as Crunchbase would use the utmost care to keep their PII confidential and securely maintained, to use this

4

1    information for business purposes only, and to make only authorized disclosures of this

2    information.

3        26.    Crunchbase failed to prioritize data and cyber security by adopting reasonable data

4    and cyber security measures to prevent and detect the unauthorized access to Plaintiffs' and Class

5    Members' PII.

6        27.    Had Crunchbase followed industry guidelines and adopted reasonable security

7    measures, Crunchbase would have prevented the theft of Plaintiffs' and Class Members' PII.

8        **B.**    **FTC Guidelines**

9        28.    Crunchbase is prohibited by the Federal Trade Commission Act ("FTC Act"), 15

10   U.S.C. § 45, from engaging in "unfair or deceptive acts or practices in or affecting commerce." The

11   Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable

12   and appropriate data security for consumers' sensitive personal information is an "unfair practice"

13   in violation of the FTC Act.

14       29.    The FTC has promulgated numerous guides for businesses that highlight the

15   importance of implementing reasonable data security practices. According to the FTC, the need for

16   data security should be factored into all business decision-making.

17       30.    The FTC provided cybersecurity guidelines for businesses, advising that businesses

18   should protect personal customer information, properly dispose of personal information that is no

19   longer needed, encrypt information stored on networks, understand its network's vulnerabilities,

20   and implement policies to correct any security problems.

21       31.    The FTC further recommends that companies not maintain PII longer than is needed

22   for authorization of a transaction; limit access to private data; require complex passwords to be used

23   on networks; use industry-tested methods for security; monitor for suspicious activity on the

24   network; and verify that third-party service providers have implemented reasonable security

25   measures.

26       32.    The FTC has brought enforcement actions against businesses for failing to

27   adequately and reasonably protect customer data, treating the failure to employ reasonable and

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1  appropriate measures to protect against unauthorized access to confidential consumer data as an

2  unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions

3  further clarify the measures businesses must take to meet their data security obligations.

4      33.    Crunchbase failed to properly implement basic data security practices. Crunchbase's

5  failure to employ reasonable and appropriate measures to protect against unauthorized access to

6  consumers' PII, or to prevent the disclosure of such information to unauthorized individuals, as

7  reflected by the sensitive PII stolen, constitutes an unfair act or practice prohibited by Section 5 of

8  the FTC Act.

9      34.    Crunchbase was always fully aware of its obligations to protect the PII of consumers

10 because of its business of obtaining, collecting, and disclosing PII as well as collecting, storing, and

11 using other confidential personal and financial information. Crunchbase was also aware of the

12 significant repercussions that would result from its failure to do so.

13 **V.    SUBSTANTIVE ALLEGATIONS**

14     **A.    The Data Breach**

15     35.    On or around January 26, 2026, it was reported that the ShinyHunters cybercrime

16 group stole more than 2 million records containing personal information from Crunchbase.

17     36.    The hackers have made available more than 400 MB of compressed files for

18 download on their website after Crunchbase refused to pay a ransom.

19     37.    Data samples include user lists with full names, contact information, addresses, job

20 data, contracts between Crunchbase and partner firms, and other internal documents detailing

21 business operations.

22     38.    Crunchbase confirmed the Data Breach and issued a public statement stating:

23 "Crunchbase detected a cybersecurity incident where a threat actor exfiltrated certain documents

24 from our corporate network."

25     39.    Alon Gal, CTO of threat intelligence company Hudson Rock, analyzed the leaked

26 Crunchbase data and found personally identifiable information, contracts, and other corporate data.

27

28

40.     The ShinyHunters leak website also lists music service SoundCloud and the robo-advisor firm Betterment, from which the hackers claim to have stolen several gigabytes of files containing tens of millions of records that include PII.

41.     Plaintiffs' and the Class's PII was disclosed without their authorization to unknown third parties as a result of the Data Breach.

42.     As a result of the Data Breach, Plaintiffs spent significant time and effort researching the Data Breach and reviewing and monitoring their accounts for fraudulent activity.

43.     Plaintiffs place significant value in the security of their PII. Plaintiffs expected that their PII would be safeguarded by Crunchbase. Crunchbase obtained this PII with the understanding that it would keep this information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

44.     As a result of the Data Breach, Plaintiffs have been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

45.     Given their susceptibility to the Data Breach, Crunchbase did not have the requisite practices and protocols in place prior to the Data Breach and that the breach likely occurred by hackers gaining access to Crunchbase's files.

46.     Crunchbase's failure to use these basic precautions that could have prevented the Data Breach was negligent and a breach of its duties to safeguard Plaintiffs' and the Class's PII.

**B.      Crunchbase's Data Security Failures Constitute Unfair and Deceptive Practices and Violations of Consumers' Privacy Rights**

47.     The FTC deems the failure to employ reasonable and appropriate measures to protect against unauthorized access to sensitive personal information an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

48.     In 2007, the FTC published guidelines that establish reasonable data security practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed;

1  encrypt information stored on computer networks; understand its network's vulnerabilities; and

2  implement policies for installing vendor-approved patches to correct security problems. The

3  guidelines also recommend that businesses consider using an intrusion detection system to expose

4  a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be

5  trying to hack the system; watch for large amounts of data being transmitted from the system; and

6  have a response plan ready in the event of a breach.

7       49.    The FTC has also published a document entitled "FTC Facts for Business," which

8  highlights the importance of having a data security plan, regularly assessing risks to computer

9  systems, and implementing safeguards to control such risks.

10       50.    The FTC has issued orders against businesses that have failed to employ reasonable

11  measures to secure sensitive personal information. These orders provide further guidance to

12  businesses regarding their data security obligations.

13       51.    Prior to the Data Breach, and during the Data Breach itself, Crunchbase failed to

14  follow guidelines set forth by the FTC and actively mishandled the management of its IT security.

15       52.    Furthermore, by failing to have reasonable data security measures in place,

16  Crunchbase engaged in an unfair act or practice within the meaning of Section 5 of the FTC Act.

17  **C.    The Value of the Disclosed PII and Effects of Unauthorized Disclosure**

18       53.    Crunchbase understood the protected PII it acquires, stores, and utilizes is highly

19  sensitive and of significant value to the owners of the PII and those who would use it for wrongful

20  purposes.

21       54.    PII is a valuable commodity to identity thieves, particularly when it is aggregated in

22  large numbers.

23       55.    Sensitive personal information commonly stolen in data breaches has economic

24  value. The purpose of stealing large caches of personal data is to use it to defraud individuals or to

25  place it for illegal sale and to profit from other criminals who buy the data and use it to commit

26  fraud and identity theft. Indeed, cybercriminals routinely post stolen personal information on

27

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1  anonymous websites, making the information widely available to a criminal underworld. There is
2  an active and robust market for this information.

3      56.    The ramifications of Crunchbase's failure to keep Plaintiffs' and Class Members'
4  PII secure are long lasting and severe.

5      57.    To avoid detection, identity thieves often hold stolen data for months or years before
6  using it. Also, the sale of stolen information on the "dark web" may take months or more to reach
7  end-users, in part because the data is often sold in small batches as opposed to in bulk to a single
8  buyer. Thus, Plaintiffs and Class Members must vigilantly monitor their financial accounts ad
9  infinitum.

10     58.    Thus, Crunchbase knew, or should have known, the importance of safeguarding the
11 PII entrusted to it and of the foreseeable consequences if its systems were breached. Crunchbase
12 failed, however, to take adequate cybersecurity measures to prevent the Data Breach from
13 occurring.

14     59.    As a highly sophisticated party that handles sensitive PII, Crunchbase failed to
15 establish and/or implement appropriate administrative, technical and/or physical safeguards to
16 ensure it protected the security and confidentiality of Plaintiffs' and Class Members' PII to protect
17 against anticipated threats of intrusion of such information.

18     60.    Identity thieves use stolen PII for various types of criminal activities, such as when
19 personal and financial is used to commit fraud or other crimes, including credit card fraud, phone
20 or utilities fraud, bank fraud and government fraud.

21     61.    The PII exfiltrated in the Data Breach can also be used to commit identity theft by
22 placing Plaintiffs and Class Members at a higher risk of "phishing," "vishing," "smishing," and
23 "pharming," which are other ways for cybercriminals to exploit information they already have in
24 order to get even more personally identifying information from a person through unsolicited email,
25 text messages, and telephone calls purportedly from a legitimate company requesting personal,
26 financial, and/or login credentials.

27
28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

62.    There is often a lag time between when fraud occurs versus when it is discovered, and also between when PII is stolen and when it is used.

63.    According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

64.    PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black market for years.

65.    Plaintiffs and Class Members rightfully place a high value not only on their PII, but also on the privacy of that data.

66.    Thus, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future.

**D.    The Data Breach Damaged Plaintiffs and Class Members**

67.    As a result of Crunchbase's deficient security measures, Plaintiffs and Class Members have been harmed by the compromise of their sensitive PII, which is likely for sale on the dark web and through private sale to other cyber criminals and/or being used by criminals for identify theft and other fraud-related crimes.

68.    Plaintiffs and Class Members face a substantial and imminent risk of fraud and identity theft as their names have now been linked with other forms of sensitive PII as a result of the Data Breach. These specific types of information are associated with a high risk of fraud.

69.    Plaintiffs and Class Members have been damaged as a result of the Data Breach, *inter alia*, as described above.

70.    Many Class Members will also incur out-of-pocket costs for protective measures such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards, and similar costs related to the Data Breach.

71.    Plaintiffs and Class Members also suffered a "loss of value" of their sensitive PII when it was stolen by hackers in the Data Breach. A robust market exists for stolen PII. Hackers sell PII on the dark web—an underground market for illicit activity, including the purchase of hacked PII—at specific identifiable prices. This market serves as a means to determine the loss of value to Plaintiffs and Class Members.

72.    Identity thieves can also combine data stolen in the Data Breach with other information about Plaintiffs and Class Members gathered from underground sources, public sources, or even Plaintiffs' and Class Members' social media accounts. Thieves can use the combined data to send highly targeted phishing telephone calls, text messages, and emails to Plaintiffs and Class Members to obtain more sensitive information. Thieves can use the combined data to commit potential crimes, including opening new financial accounts in Plaintiffs' and Class Members' names, taking out loans in Plaintiffs' and Class Members' names, using Plaintiffs' and Class Members' information to obtain government benefits, filing fraudulent tax returns using Plaintiffs' and Class Members' information, obtaining Social Security numbers in Plaintiffs' and Class Members' names but with another person's photograph, and giving false information to police during an arrest.

73.    Plaintiffs and Class Members have spent and will continue to spend substantial amounts of time monitoring their accounts for identity theft and fraud, the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely than they otherwise would have done but for the Data Breach. These efforts are burdensome and time-consuming, especially because Crunchbase has disclosed little information about the Data Breach, forcing consumers to continue to monitor their accounts indefinitely.

74.    In the case of a data breach, merely reimbursing a consumer for a financial loss due to identity theft or fraud does not make that individual whole again, especially when that individual spent significant time monitoring their accounts and rectifying any problems that arose.

75.    A victim whose personal information has been stolen or compromised may not see the full extent of identity theft or fraud until long after the initial breach. Additionally, a victim

whose personal information has been stolen may not become aware of charges when they are nominal, as typical fraud-prevention algorithms may not capture such charges. Those charges may be repeated, over and over again, on a victim's account.

## VI.    CLASS ACTION ALLEGATIONS

76.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of the following nationwide Class:

> All persons residing in the United States whose PII was compromised in the Data Breach.

77.    Excluded from the Class is Crunchbase, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Crunchbase has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

78.    Plaintiffs reserve the right to modify, expand or amend the above Class definitions or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

79.    Certification of Plaintiffs' claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

80.    ***Numerosity.*** All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The Members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. Public reporting of the Data Breach indicates it includes approximately 2 million records. While Plaintiffs are informed and believe that there are likely millions of members of the Class, the precise number of Class Members is not yet known to Plaintiffs.

81.    Class Members may be identified through objective means. Class Members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

82.    ***Commonality and Predominance.*** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a.    Whether Crunchbase engaged in active misfeasance and misconduct alleged herein;

b.    Whether Crunchbase owed a duty to Class Members to safeguard their sensitive PII;

c.    Whether Crunchbase failed to implement and maintain reasonable security procedures and monitoring practices appropriate for the nature and scope of the information compromised in the Data Breach;

d.    Whether Crunchbase breached its duty to Class Members to safeguard their sensitive PII;

e.    Whether Crunchbase's conduct violated the FTC Act;

f.    Whether Crunchbase's data security systems and monitoring processes prior to and during the Data Breach complied with applicable law and were consistent with industry standards;

g.    Whether Crunchbase breached implied contracts with Plaintiffs and Class Members;

h.    Whether Crunchbase was unjustly enriched by unlawfully retaining a benefit conferred upon it by Plaintiffs and Class Members;

i.    Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of the Data Breach;

j.    Whether Crunchbase's failure to provide adequate security proximately caused Plaintiffs' and Class Members' injuries;

k.    Whether Crunchbase owed a duty to provide timely and adequate notice of the Data Breach to Plaintiffs and Class Members;

l.    Whether Crunchbase failed to notify Plaintiffs and Class Members as soon as practicable and without delay after the Data Breach was discovered; and

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

m.     Whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief.

83.     ***Typicality.*** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiffs' claims are typical of the claims of all Class Members because Plaintiff, like other Class Members, suffered theft of their sensitive personal information in the Data Breach.

84.     Adequacy of Representation. All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiffs are an adequate Class Representatives because they are members of the Class and their interests do not conflict with the interests of other Class Members that they seek to represent. Plaintiffs are committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiffs have retained counsel competent and experienced in complex class action litigation of this type, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class's interests.

85.     ***Predominance and Superiority.*** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiffs' case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Crunchbase, so it would be impracticable for Members of the Class to individually seek redress for Crunchbase's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

86.    ***Cohesiveness.*** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Crunchbase has acted, or refused to act, on grounds generally applicable to the Class such that final declaratory or injunctive relief is appropriate.

## VII.    CLAIMS FOR RELIEF

### COUNT I

### NEGLIGENCE

87.    Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

88.    By collecting and maintaining sensitive PII, Crunchbase had a common law duty of care to use reasonable means to secure and safeguard the sensitive PII and to prevent disclosure of the information to unauthorized individuals. Crunchbase's duty included a responsibility to implement processes to prevent unauthorized access to its network, including by implementing multi-factor authentication and other precautions.

89.    Crunchbase owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, securing, safeguarding, storing, and protecting Plaintiffs' and Class Members' PII in its control from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

90.    Crunchbase owed a duty of care to Plaintiffs and Class Members to provide data security consistent with the various industry standards, statutory requirements, regulations, and other notices described above.

91.    Crunchbase's duty of care also arose as a result of the special relationship that existed between Crunchbase and Plaintiffs and Class Members. The special relationship arose because Crunchbase was entrusted with Plaintiffs' and the Class's PII. Only Crunchbase was in a position to ensure it had sufficient safeguards to protect against the foreseeable risk that a data breach could occur and would result in substantial harm to Plaintiffs and Class Members.

92.    Crunchbase's duties also arose under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal

15

1    and confidential information. Plaintiffs and Class Members are consumers within the class of

2    persons Section 5 of the FTC Act was intended to protect. Moreover, the harm that has occurred is

3    the type of harm that the FTC Act was intended to guard against.

4        93.    Crunchbase was subject to an "independent duty" untethered to any contract.

5        94.    Crunchbase also owed Plaintiffs and Class Members a duty to notify them within a

6    reasonable time frame of any breach to their PII. Crunchbase also owed a duty to timely and

7    accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data

8    Breach. This duty is necessary for Plaintiffs and Class Members to take appropriate measures to

9    protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary

10   steps in an effort to mitigate the fallout of the Data Breach.

11       95.    Crunchbase owed these duties to Plaintiffs and Class Members because they are

12   members of a well-defined, foreseeable, and probable class of individuals whom Crunchbase knew

13   or should have known would suffer injury-in-fact from its inadequate security protocols. After all,

14   Crunchbase actively sought and obtained the PII of Plaintiffs and Class Members.

15       96.    Given the vast amount of highly valuable PII that Crunchbase aggregates, the risk

16   that unauthorized persons would attempt to gain access to Plaintiffs' and Class Members' PII and

17   misuse it was foreseeable.

18       97.    Crunchbase knew or should have known the importance of exercising reasonable

19   care in handling the PII entrusted to it.

20       98.    104.    Given the nature of Crunchbase's business, the sensitivity and value of the

21   PII it maintains, and the resources at its disposal, Crunchbase should have identified and foreseen

22   vulnerabilities in its systems and prevented the authorized exfiltration of Plaintiffs' and Class

23   Members' PII.

24       99.    It was or should have been reasonably foreseeable to Crunchbase that its failure to

25   exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' PII would

26   result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class Members'

27   PII to unauthorized individuals.

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

100.    It was also foreseeable that Crunchbase's failure to provide timely and adequate notice of the Data Breach would result in injury to Plaintiffs and Class Members.

101.    Crunchbase breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiffs' and Class Members' PII. But for Crunchbase's negligence, Plaintiffs and Class Members would not have been injured. The specific negligent acts and omissions committed by Crunchbase include, but are not limited to:

a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiffs' and Class Members' PII;

b.    Failing to comply with—and thus violating—FTC Act and its regulations;

c.    Failing to adequately monitor the security of its networks and systems;

d.    Failing to have in place mitigation policies and procedures;

e.    Allowing unauthorized access to Plaintiffs' and Class Members' PII;

f.    Failing to timely notify Plaintiffs and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

102.    It was foreseeable that Crunchbase's failure to use reasonable measures to protect Plaintiffs' and Class Members' PII would result in injury to Plaintiffs and Class Members.

103.    Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the industry. It was therefore foreseeable that the failure to adequately safeguard Plaintiffs' and Class Members' PII would result in one or more types of injuries to Plaintiffs and Class Members.

104.    Plaintiffs and Class Members had and have no ability to protect their PII that was, or remains, in Crunchbase's possession and control.

105.    But for Crunchbase's negligent conduct or breach of the above-described duties, Plaintiffs' and Class Members' PII would not have been compromised. The PII of Plaintiffs and the Class was accessed and stolen as the proximate result of Crunchbase's failure to exercise

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1  reasonable care in safeguarding, securing, and protecting such PII by implementing and maintaining

2  appropriate security measures.

3        106.    Crunchbase's failure to take proper security measures created conditions conducive

4  to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiffs' and Class

5  Members' PII.

6        107.    Neither Plaintiffs nor the other Class Members contributed to the Data Breach and

7  subsequent misuse of their PII.

8        108.    As a direct and proximate result of Crunchbase's negligence, Plaintiffs and Class

9  Members have been injured as alleged herein. Plaintiffs and Class Members are entitled to damages,

10  including actual, compensatory, punitive, and nominal damages suffered because of the Data

11  Breach in an amount to be proven at trial.

12        109.    Plaintiffs and Class Members are also entitled to injunctive relief requiring

13  Crunchbase to, among other things: (i) Strengthen its data security systems and monitoring

14  procedures; (ii) submit to future annual audits of those systems; and (iii) free and adequate credit

15  monitoring and identity theft insurance to all Class Members for the remainder of their lives.

**COUNT II**

**BREACH OF IMPLIED CONTRACT**

18        110.    Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully

19  set forth herein.

20        111.    Crunchbase solicited Plaintiffs' and the Class's PII as part of its regular business

21  practice.

22        112.    Plaintiffs and Class Members reasonably believed and expected that Crunchbase,

23  had data security practices that complied with relevant laws, regulations, and industry standards

24  when they entered into the contracts with Crunchbase.

25        113.    Plaintiffs and Class Members reasonably believed and expected that Crunchbase

26  would use part of the funds it obtained from to obtain and oversee adequate data security.

27  Crunchbase failed to do so.

28

18

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

114.     Crunchbase affirmatively acknowledges that it handles sensitive types of data in its Privacy Policy.

115.     Plaintiffs and Class Members would not have provided their sensitive PII to Crunchbase, in the absence of Crunchbase's implied promise to keep their sensitive PII reasonably secure.

116.     Plaintiffs and Class Members fully performed their obligations under the implied contracts by providing their PII to Crunchbase.

117.     Crunchbase breached its implied contracts with Plaintiffs and Class Members by failing to safeguard and protect their PII.

118.     As a direct and proximate result of Crunchbase's breaches of the implied contracts, Plaintiffs and Class Members have been injured as alleged herein. Plaintiffs and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

119.     Plaintiffs and Class Members are also entitled to injunctive relief requiring Crunchbase to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free and adequate credit monitoring and identity theft insurance to all Class Members for the remainder of their lives.

## COUNT III

### UNJUST ENRICHMENT

120.     Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

121.     Plaintiffs and Class Members conferred a monetary benefit upon Crunchbase in the form of their valuable PII, which it used to provide services for profit.

122.     Crunchbase was expected to use these profits, in part, to pay for and oversee adequate data privacy infrastructure, practices, and procedures necessary to protect this PII.

123.     Plaintiffs and Class Members allowed Crunchbase to access and store their PII on the belief that Crunchbase complied with its duty to safeguard and protect this information. Putting

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

its short-term profit ahead of safeguarding PII, and unbeknownst to Plaintiffs and Class Members, Crunchbase knowingly sacrificed security in favor of collecting more profits. Crunchbase knew that the manner in which it maintained Plaintiffs' and Class Members' PII violated its fundamental duties to Plaintiffs and Class Members by disregarding industry-standard security protocols to ensure confidential information was securely transmitted and stored.

124. Crunchbase had within its exclusive knowledge at all relevant times the fact that it failed to implement adequate security measures to keep PII secure. This information was not available to Plaintiff, Class Members, or the public at large.

125. Based on this expectation and trust, Crunchbase knew that Plaintiffs and Class Members would not have disclosed their sensitive information to it if they had known it had inadequate data security.

126. Plaintiffs and Class Members did not expect that Crunchbase would store their PII insecurely and would not have allowed Crunchbase to store their PII if they had known of its deficient data security.

127. Crunchbase enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' PII. Under the principles of equity and good conscience, Crunchbase should not be permitted to retain these benefits.

128. Plaintiffs and Class Members have no adequate remedy at law. Crunchbase should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class Members all unlawful or inequitable gains it received.

## COUNT IV

### DECLARATORY AND INJUNCTIVE RELIEF

129. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

130. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further

1 necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are

2 tortious and violate the terms of the statutes described in this Complaint.

3      131.    An actual controversy has arisen in the wake of the Data Breach regarding

4 Crunchbase's present and prospective common law and statutory duties to reasonably safeguard its

5 consumers' sensitive PII and whether Crunchbase is currently maintaining data security measures

6 adequate to protect Plaintiffs and Class Members from further data breaches. Plaintiffs allege that

7 Crunchbase's data security practices remain inadequate.

8      132.    Plaintiffs and Class Members continue to suffer injury as a result of the compromise

9 of their sensitive PII and remain at imminent risk that further compromises of their PII will occur

10 in the future.

11      133.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter

12 a judgment declaring, among other things, the following:

13      a.    Crunchbase continues to owe a legal duty to secure Class Members' PII and to

14           timely notify Class Members of a data breach under the common law and Section

15           5 of the FTC Act; and

16      b.    Crunchbase continues to breach this legal duty by failing to employ reasonable

17           measures to secure Class Members' PII, including to monitor, oversee, and audit

18           its compliance with applicable industry standards, laws, and regulations.

19      134.    The Court also should issue corresponding prospective injunctive relief requiring

20 Crunchbase to employ adequate security protocols consistent with law and industry standards to

21 protect Crunchbase's consumers' sensitive PII.

22      135.    If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable

23 injury, for which they lack an adequate legal remedy. The threat of another data breach is real,

24 immediate, and substantial. If another breach occurs, Plaintiffs and Class Members will not have

25 an adequate remedy at law, because not all of the resulting injuries are readily quantified and they

26 will be forced to bring multiple lawsuits to rectify the same conduct.

27

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

136.    The hardship to Plaintiffs and Class Members if an injunction does not issue greatly exceeds the hardship to Crunchbase if an injunction is issued. If another data breach occurs, Plaintiffs and Class Members will likely be subjected to substantial identity theft and other damages. On the other hand, the cost to Crunchbase of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Crunchbase has a pre-existing legal obligation to employ such measures.

137.    Issuance of the requested injunction will serve the public interest by preventing another data breach concerning Crunchbase's consumers' PII, thus eliminating the additional injuries that would result to Plaintiffs and the thousands of consumers whose confidential information would be further compromised.

## VIII.   REQUEST FOR RELIEF

138.    Plaintiff, on behalf of himself and all others similarly situated, request that the Court enter judgment against Crunchbase including the following:

A.    Determining that this matter may proceed as a class action and certifying the Class asserted herein;

B.    Appointing Plaintiffs as representatives of the applicable Class and appointing Plaintiffs' counsel as Class Counsel;

C.    Awarding Plaintiffs and Class Members actual, compensatory, punitive, and nominal damages as set forth above;

D.    Ordering injunctive relief requiring Crunchbase to, among other things: (i) Strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) provide lifetime free credit monitoring and identity theft insurance to all Class Members; and (iv) timely notify consumers of any future data breaches;

E.    Entering a declaratory judgment stating that Crunchbase owes a legal duty to secure its consumers' sensitive PII, to timely notify consumers of any data breach, and to

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1    establish and implement data security measures that are adequate to secure sensitive

2    personal information;

3    F.    Awarding attorneys' fees, costs, and expenses, as provided by law or equity;

4    G.    Awarding pre-judgment and post-judgment interest, as provided by law or equity;

5    and

6    H.    Such other relief as the Court may allow.

7    **IX.    DEMAND FOR JURY TRIAL**

8    139.    Plaintiffs demand a trial by jury for all issues so triable.

9    Dated: February 12, 2026                    Respectfully submitted,

10                                   */s/ Sylvie Bourassa*
                                    Sylvie Bourassa (SBN# 283210)
11                                   Christian Levis (*pro hac vice* forthcoming)
                                    Amanda G. Fiorilla (*pro hac vice* forthcoming)
12                                   **LOWEY DANNENBERG, P.C.**
13                                   44 South Broadway, Suite 1100
                                    White Plains, NY 10601
14                                   Telephone: (914) 997-0500
                                    Facsimile: (914) 997-0035
15                                   Email: clevis@lowey.com
                                    Email: afiorilla@lowey.com
16                                   Email: sbourassa@lowey.com

17                                   Anthony M. Christina (*pro hac vice* forthcoming)
18                                   **LOWEY DANNENBERG, P.C.**
                                    One Tower Bridge
19                                   100 Front Street, Suite 520
                                    West Conshohocken, PA 19428
20                                   Telephone: (215) 399-4770
                                    Facsimile: (914) 997-0035
21                                   Email: achristina@lowey.com

22                                   *Counsel for Plaintiffs and the Class*

23

24

25

26

27

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL